CHOY, Senior Circuit Judge:
 

 This appeal concerns the ability of the district court, sitting in California under diversity jurisdiction, to assert personal jurisdiction and to apply California regulations against a foreign insurance company which was designed not only to indemnify California physicians, but also to avoid the reach of California law. The district court, concluding that personal jurisdiction could be exercised and that the state’s regulations were applicable, granted summary judgment against the insurer. The court also ordered the insurer to pay attorney’s fees under California Insurance Code § 1619. We affirm the grant of summary judgment and the award of attorney’s fees.
 

 I
 

 BACKGROUND
 

 In early 1977, Harold Nachtrieb, attorney for the Sierra-Nevada Memorial Miners’ Hospital (“Hospital”), went to the Cayman Islands to arrange for the formation of the Grass Valley Medical Reimbursement Fund, Ltd. (“Fund”). The purpose of the Fund was to provide self-funding indemnity insurance for doctors at the Hospital. Approximately twenty-two of the Hospital’s physicians were insured by the Fund. The Hospital is located in Nevada City, California. The insureds are California residents. Among those insured was Dr. C.G. McClure.
 

 The Fund was carefully and deliberately established to appear to be doing business only in the Cayman Islands. The Fund was incorporated in the Cayman Islands, where it maintains its sole office. Its directors meetings are held there. All transactions and communications (e.g. the issuance and delivery of the policy, the payment of premiums and claims) are conducted in the Cayman Islands. The insureds work through an attorney-in-fact or agent in the Cayman Islands. The Fund contends that it does not solicit business or advertise in California. By this elaborate structure, the Fund deliberately intended to avoid California insurance regulations, while at the same time, providing physicians at the Hospital with malpractice insurance.
 

 The Fund contends that the type of insurance that it provides is a form of self-funding reimbursement, or indemnity, insurance. Premiums from the California doctors are the sole source of funds to pay out claims. The Fund is obligated to pay only if the doctor has first paid pursuant to a judgment or if the Patient Care Committee of the Grass Valley Medical Quality Association (“Association”) (a unit of the Hospital under which staff physicians were organized) has approved a settlement.
 

 The insurance contract provides that it would be governed by Cayman Island law. However, disputes between the insured and the Fund are to be determined in arbitration, following California arbitration law.
 

 In 1978, the plaintiff’s wife, Jean Hais-ten, commenced a malpractice action against Dr. McClure and ultimately was awarded $185,000 in binding arbitration. In 1983, Dr. McClure filed for bankruptcy, and was granted discharge from his obligation to Mrs. Haisten. The plaintiff, Mitchell Haisten, administrator of his now deceased wife’s estate, brought action against the Fund for satisfaction of the prior judgment in accordance with California law, which requires the insurer to pay the outstanding judgments of a bankrupt insured. The district court granted Hais-
 
 *1396
 
 ten’s motion for summary judgment, and also ordered the Fund to pay attorney’s fees under Cal.Ins.Code § 1619. The Fund appeals.
 

 II
 

 PERSONAL JURISDICTION
 

 A.
 
 Standard of Review
 

 Haisten bears the burden of proving by preponderance of the evidence facts which substantiate the exercise of jurisdiction by the district court.
 
 Data Disc, Inc. v. Systems Technology Associates, Inc., 557
 
 F.2d 1280, 1286 n. 2 (9th Cir.1977).
 
 [1]
 
 A district court’s determination that personal jurisdiction can be properly exercised is a question of law, reviewable
 
 de novo
 
 when the underlying facts are undisputed.
 
 Pacific Atlantic Trading Co. v. M.V. Main Express,
 
 758 F.2d 1325, 1326 (9th Cir.1985). However, the Fund presented evidence and filed affidavits challenging the existence of jurisdiction. Nevertheless, the district court granted Haisten’s motion for summary judgment, apparently disregarding the facts contested by the Fund.
 
 [2]
 
 We review
 
 de novo
 
 the district court’s grant of summary judgment, and must affirm the implicit finding of personal jurisdiction if, after viewing the evidence in the light most favorable to the defendant, we find that there exists no genuine issue of material fact.
 
 Ramirez v. National Distillers and Chemical Corp.,
 
 586 F.2d 1315, 1318 (9th Cir.1978).
 

 B.
 
 The Due Process Test
 

 In order to establish the existence of personal jurisdiction in a diversity of citizenship ease, the plaintiff must show, first, that the state statute of the forum confers personal jurisdiction over the nonresident defendant and, second, that the exercise of jurisdiction accords with federal constitutional principles of due process.
 
 Flynt Distributing Co., Inc. v. Harvey,
 
 734 F.2d 1389, 1392 (9th Cir.1984). However, because in this case California permits the exercise of jurisdiction “on any basis not inconsistent with the Constitution ... of the United States,” Cal.Civ.Proc. Code § 410.10 (West 1973), the state and federal limits are coextensive.
 
 Data Disc,
 
 557 F.2d at 1286. Thus, the only issue presented is whether the exercise of jurisdiction complied with due process.
 

 It is axiomatic that due process “does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.”
 
 International Shoe Co. v. Washington,
 
 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). This case is unique in that we are presented with a defendant who has made a tremendous effort to construct a transaction in such a way as to avoid the appearance of contacts with California, and thus the reach of the California courts. Nonetheless, its only purpose was to provide insurance for California doctors treating California patients and to avoid requirements imposed by California law.
 

 A state may assert either general or specific jurisdiction over a nonresident defendant. If the defendant’s activities in the state are “substantial” or “continuous and systematic,” general jurisdiction may be asserted even if the cause of action is unrelated to those actvities.
 
 Data Disc,
 
 557 F.2d at 1287. Haisten does not argue
 
 *1397
 
 that the Fund is subject to general jurisdiction.
 

 If the defendant’s activities are not so pervasive to subject him to general jurisdiction, then a court may still assert jurisdiction for a cause of action which arises out of the defendant’s forum-related activities. We have established a three-part test for determining whether such limited jurisdiction may be exercised:
 

 1. The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
 

 2. The claim must be one which arises out of or results from the defendant’s forum-related activities.
 

 3. Exercise of jurisdiction must be reasonable.
 

 Pacific Atlantic,
 
 758 F.2d at 1327. The plaintiff bears the burden of proving the existence of jurisdiction,
 
 see Forsythe v. Overmyer,
 
 576 F.2d 779, 781 (9th Cir.),
 
 cert. denied,
 
 489 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978), including the element of reasonableness,
 
 see Insurance Company of North America v. Marina Salina Cruz,
 
 649 F.2d 1266, 1273 (9th Cir.1981).
 

 However, recent Supreme Court cases indicate that modification of our three-prong test is appropriate. In particular, within the rubric of “purposeful availment” the Court has allowed the exercise of jurisdiction over a defendant whose only “contact” with the forum state is the “purposeful direction” of a
 
 foreign
 
 act having
 
 effect
 
 in the forum state.
 
 See, e.g., Calder v. Jones,
 
 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984). Moreover, jurisdiction may be exercised with a
 
 lesser showing of minimum contact
 
 than would otherwise be required if considerations of reasonableness dictate.
 
 Burger King Corp. v. Rudzewicz,
 
 — U.S. -, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Finally, there is a
 
 presumption of reasonableness
 
 upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable. 105 S.Ct. at 2185. We turn now to a discussion of these modifications and their implications with respect to the case at bar.
 

 1.
 
 Act Requirement
 

 This case for the most part turns on a finding that the Fund performed some act by which it purposefully availed itself of the privilege of conducting activities in California. The Fund correctly contends that it did everything “humanly possible” to avoid the benefits and protection of California’s laws. It maintains no offices in California. Directors’ meetings and decision-making are conducted outside the state. Moreover, the Fund argues that its policies of insurance have not been solicited, issued, delivered, or paid for in California. In short, no part of the transaction for insurance took place in the forum state.
 

 However, activity by the defendant need not physically take place in the forum state so as to constitute sufficient contact under the due process test. The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.
 
 Burger King Corp. v. Rudzewicz,
 
 105 S.Ct. at 2183. The requirement is but a test for determining the more fundamental issue of whether a “defendant’s conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.”
 
 World-Wide Volkswagon Corp. v. Woodson,
 
 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Thus, the Supreme Court has consistently rejected the notion that absence of physical contacts with a forum state can defeat personal jurisdiction, “[s]o long as a commercial actor’s efforts are ‘purposefully
 
 directed
 
 ’ toward residents of another State.”
 
 Burger
 
 
 *1398
 

 King,
 
 105 S.Ct. at 2184 (emphasis added).
 
 See also Calder v. Jones,
 
 465 U.S. at 790, 104 S.Ct. at 1487.
 

 We look toward the economic reality of the Fund’s activities and conclude that the Fund “purposefully directed” its commercial efforts toward California residents. The substance, not form, of the defendant’s activities is dispositive.
 
 See Southern Machine Company v. Mohasco Industries, Inc.,
 
 401 F.2d 374, 382 (6th Cir.1968) (“the technicalities of the execution of the contract and the contractual provision that the contract was made in New York ... cannot change the business realities of the transaction”).
 
 See also Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,
 
 614 F.2d 1247, 1254 (9th Cir.1980);
 
 Forsythe v. Overmyer,
 
 576 F.2d at 784 n. 7.
 

 According to the contract of insurance, funding for reimbursement made by the Fund is generated exclusively from premiums paid by the members of the Grass Valley Medical Quality Association who are insured by the Fund and the earnings from such premiums. The Fund, then, provides a self-contained plan, whereby premiums from California physicians are disbursed to California physicians who suffer loss due to malpractice liability. Moreover, the district court found that the reason for the Fund’s existence was “for the benefit of California residents; to wit, California doctors.” The Fund presents no evidence which challenges this fact. Indeed, the Fund admits that it was created with the purpose of providing a certain type of indemnity insurance sought by a group of physicians at Sierra Nevada Memorial-Miners Hospital. Thus, despite the formal manner in which the transactions between the Fund and its insureds were conducted, as a matter of commerical actuality and of placing substance over form, we find that the Fund’s outside activity was “purposefully directed” toward participation in the California insurance market.
 

 In addition, the insurance agreement explicitly concerned the indemnification of
 
 California
 
 physicians against liability solely under
 
 California
 
 malpractice law. Thus, the effect in California was not only foreseeable, it was contemplated and bargained for. A defendant who enters into an obligation which she knows will have effect in the forum state purposely avails herself of the privilege of acting in the forum state.
 
 See Calder v. Jones,
 
 465 U.S. at 789-90, 104 S.Ct. at 1487;
 
 Keeton v. Hustler Magazine, Inc.,
 
 465 U.S. 770, 781, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984);
 
 World-Wide Volkswagon v. Woodson,
 
 444 U.S. at 297, 100 S.Ct. at 567.
 
 See also Flynt Distributing Co., Inc. v. Harvey,
 
 734 F.2d 1389, 1393 (9th Cir.1984) (nonresident defendant’s agreement with a California corporation to distribute magazines in California was sufficient, to support jurisdiction in California despite the fact that the agreement was negotiated and signed in New York);
 
 Nelson by Carson v. Park Industries, Inc.,
 
 717 F.2d 1120, 1127 (7th Cir.1983) (finding jurisdiction over a foreign manufacturer who knew of the distribution scheme into the forum state and derived economic benefit from the sale, despite the fact that the distribution contract was transacted outside the forum state),
 
 cert. denied sub nom. Bunnan Tong & Co., Ltd. v. F. W. Woolworth Co.,
 
 and
 
 United Garment Manufacturing Co., Ltd. v. Nelson by Carson,
 
 465 U.S. 1024, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984);
 
 Southern Machine Company,
 
 401 F.2d at 381-83 (finding purposeful availment where the defendant entered into a licensing agreement which contemplated the manufacture and marketing of the licensed item in the forum state). Because the Fund insured twenty-two California physicians against loss from malpractice liability that might be assessed specifically in California, the Fund’s argument that it did not deliberately engage in activities in California is not convincing. The Fund not only contemplated but also expected the insureds to be in California, as evidenced by the fact that indemnification was restricted by the terms of the contract to reimbursement for “amounts paid by the Insured pursuant to arbitration awards or court judgments determining the Insured to be legally responsible for damages to a
 
 *1399
 
 person by reason of professional negligence (medical malpractice) occurring
 
 in the State of California
 
 during the term of this contract.” (Emphasis added.)
 

 The Fund argues that the application of the “purposeful direction” analysis to sustain the exercise of jurisdiction where, as here, there are
 
 no
 
 physical contacts between the forum state and the defendant should be restricted to the products liability area,
 
 see Pacific Atlantic Trading Co. v. M/V Main Express,
 
 758 F.2d at 1330 n. 1, or to other types of tort liability,
 
 e.g. Colder v. Jones,
 
 465 U.S. at 784-85, 104 S.Ct. at 1484 (libel).
 
 Cf. Burger King,
 
 105 S.Ct. at 2179 n. 7, 2184 (stating that purposeful direction without physical contact could support jurisdiction, but also finding that defendant directly communicated with plaintiff in the forum state in the formation of the contract and the resolution of disputes);
 
 McGee v. International Life Insurance Co.,
 
 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (stating the importance of the plaintiff’s and forum state’s interest, but also finding that the contract was delivered in the forum state and the insured mailed premiums from there).
 

 We reject this argument and find the application of the foreign-act-with-forum-effect standard appropriate in the insurance context presented by the instant case. As in the products liability area, the state has a manifest interest in providing its residents with a forum for reaching insurance companies who refuse to honor legitimate claims.
 
 See McGee v. International Insurance Co.,
 
 355 U.S. at 223, 78 S.Ct. at 201. This is especially true with regard to companies that insure against loss from liability for
 
 personal injury,
 
 whose actions implicate the safety of the state’s residents.
 
 See Merchants Mutual Automobile Liability Insurance Co. v. Smart,
 
 267 U.S. 126, 129-30, 45 S.Ct. 320, 321, 69 L.Ed. 538 (1925) (describing the policy behind regulating insurers).
 

 Moreover, the “substantial connection” of a single contract with a forum state,
 
 see, e.g., McGee v. International Life Insurance Co.,
 
 355 U.S. at 223, 78 S.Ct; at 201, relates not to the physical transaction, i.e. the fact that it was delivered in the state, but to the “quality and nature” of the relationship created by the contract.
 
 See Burger King,
 
 105 S.Ct. at 2186. An insurance contract creates continuing obligations between the insurer and the insured.
 
 See, e.g., Travelers Health Association v. Virginia,
 
 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950). Furthermore, this circuit has clearly held that “[a]n out-of-state act having an effect within the state may be sufficient to support jurisdiction” in a non-tort situation.
 
 Forsythe v. Overmyer,
 
 576 F.2d at 783 (finding jurisdiction where defendant assumed personal liability in the event of default on a contract expressly subject to jurisdiction in the forum state).
 

 The Fund argues that the mere fact that the insureds who signed the contract happen to be residents of California is insufficient to support jurisdiction. The Fund contends that the decision to practice medicine in California was the insured’s, and that to base jurisdiction on the insured’s choice would “shift the focus of the inquiry from the relationship among the defendant, the forum, and the litigation to that among the plaintiff, the forum, the insure[d] and the litigation.”
 
 Rush v. Savchuk,
 
 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980).
 
 See also Kulko v. Superior Court,
 
 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (mother who moved to California could not sue New York father for child support in California);
 
 Hunt v. Erie Insurance Group,
 
 728 F.2d 1244 (9th Cir.1984) (accident victim who moved to California to take advantage of medical benefits could not sue East Coast insurer in California). However, in the case at bar, the contract of insurance stipulated that only California malpractice liability would trigger the reimbursement mechanism. Thus, unlike
 
 Kul-ko
 
 and
 
 Erie,
 
 the Fund expected and bargained for specifically a California insured.
 

 Finally, the Fund points to the choice of law provision, which states that the contract is to be “governed under the
 
 *1400
 
 laws of the Cayman Islands, British West Indies.” While this provision should not be ignored in determining purposeful availment, it alone will not suffice to block jurisdiction in California where other facts indicate that the Fund has purposely directed its activities toward insuring California physicians.
 
 See Burger King,
 
 105 S.Ct. at 2187.
 

 Because the sum and substance of the Fund’s transactions to insure California doctors against loss from medical malpractice exclusively in California indicate that the Fund purposely directed its activities toward California residents, we conclude that the Fund purposely availed itself of the benefit and privilege of conducting activities in California. In light of its substantive connection with California, the Fund should have reasonably anticipated being haled into court there.
 

 2.
 
 Arising Out of Forum-Related Activities
 

 Haisten claims that according to California law, the Fund’s contract with Dr. McClure is deemed to include a provision that the insurer must satisfy judgment entered against the insured when the insured is relieved of its obligation through bankruptcy. Thus, Haisten is suing the Fund on the basis of its contract to provide indemnity to the California physician. As discussed above, the Fund’s forum-related activity consists of the contract to indemnify specifically California physicians against loss from California malpractice liability. Because Haisten’s claim arises out of the insurance contract between Dr. McClure and the Fund, which constitutes in substance the Fund’s contact with California, we hold that Haisten meets the second prong of the limited jurisdiction test.
 
 See Pacific Atlantic Trading Co. v. M/V Main Express,
 
 758 F.2d 1325, 1329 (9th Cir.1985).
 

 3.
 
 Reasonableness
 

 A finding of minimum contacts “may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with ‘fair play and substantial justice.’ ”
 
 Burger King,
 
 105 S.Ct. at 2184 (quoting
 
 International Shoe Co. v. Washington,
 
 326 U.S. at 320, 66 S.Ct. at 160 (1945)). These other factors include: the burdens on the defendant, the forum State’s interest in adjudicating the dispute, the plaintiff’s interest in obtaining convenient and effective relief, the interstate judicial system’s interest in obtaining convenient and effective relief, and the shared interest of the several states in furthering fundamental substantive social policies.
 
 Burger King,
 
 105 S.Ct. at 2184 (quoting
 
 World-Wide Volkswagon Corp.,
 
 444 U.S. at 292, 100 S.Ct. at 564).
 

 This circuit has considered reasonableness a separate factor in determining limited personal jurisdiction.
 
 See Pacific Atlantic Trading Co.,
 
 758 F.2d at 1329. However, in
 
 Burger King
 
 the Supreme Court stated that presence of the reasonableness factors listed above may balance out an otherwise insufficient showing of minimum contact: “These considerations sometimes serve to establish the reasonableness of jurisdiction
 
 upon a lesser showing of minimum contacts than would otherwise be required." Burger King,
 
 105 S.Ct. at 2184 (emphasis added). Moreover, after a showing that the defendant has purposefully directed his activities at forum residents, the
 
 defendant
 
 “must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.”
 
 Id.
 
 at 2185.
 

 Because we hold that the Fund established minimum contacts with California through its purposefully directed activity of contracting to insure California residents against loss from malpractice liability in California, the Fund must present a compelling case that jurisdiction would be unreasonable.
 
 Burger King,
 
 105 S.Ct. at 2185. No factor among those enumerated by the Supreme Court suggests that the exercise of jurisdiction would be unreasonable here.
 

 Purposeful Interjection.
 
 The Fund contends it did not purposefully interject itself into California affairs. Indeed, it argues
 
 *1401
 
 that it intended to avoid California jurisdiction as much as possible. Nevertheless, our finding that the Fund
 
 purposefully directed
 
 its efforts toward California residents militates against use of the purposeful interjection factor on the Fund’s behalf.
 
 Cf. Burger King,
 
 105 S.Ct. at 2185 (creating a presumption of reasonableness upon a showing of purposeful direction);
 
 Data Disc,
 
 557 F.2d at 1288 (noting that it may be unreasonable to exercise jurisdiction where the effect in the forum state was caused by defendant’s negligent and not purposeful acts).
 

 We also note that the Fund’s contact with California consists of more than a single contract with effects in the forum state. The Fund insures at least twenty-two California physicians, and indeed, depends on the premiums paid by those Cai-fornia physicians to provide the funds in the event that indemnity is necessary. Thus, while it may be true that a court should exercise caution in supporting jursi-diction over a foreign defendant for its foreign acts with forum effects,
 
 Pacific Atlantic,
 
 758 F.2d at 1330, this caution should not serve as a shield to protect a foreign insurer who attempts through the form of the transaction to sell insurance to forum state residents without “acting” in the forum.
 

 Moreover, an intention to avoid jurisdiction is not the equivalent of an intention to avoid the benefits of the California insurance market. Transactions by the Fund were intentionally constructed to avoid California; nevertheless, they were also intended to provide California doctors with indemnity insurance against loss from malpractice liability in California. It is the direction of its interjection, not its form that is of consequence.
 

 Forum State Interest.
 
 Furthermore, California has a strong interest in providing an effective means of redress for its residents when their insurers refuse to pay claims.
 
 McGee v. International Life Insurance Co.,
 
 355 U.S. at 223, 78 S.Ct. at 201. The Fund’s definition of the state’s interest — to protect its residents from injury and provide a forum to remedy harm — is too narrow in light of state statutes which specifically provide for an accident victim’s right of action against an insurer occasioned by the liability of the tortfeasor-in-sured.
 
 See
 
 Cal.Ins.Code § 11580 (West Supp.1985).
 

 The Fund argues that if California wished to avoid the effects of a doctor’s filing for bankruptcy (i.e. the preclusion of recovery by the victim), it could have enacted legislation requiring doctors to carry malpractice liability. However, the state interest involved is not only to provide recovery for malpractice injury; it is also to protect state residents from the unscrupulous behavior of insurance companies, such as the avoidance of paying liability claims through the bankruptcy of a tortfeasor-in-sured, while at the same time benefiting from the income derived from California premiums.
 

 In
 
 McGee,
 
 the insured designated the plaintiff as his beneficiary; California had an interest in providing the plaintiff with a forum against the insurance company for payment under the policy. 355 U.S. at 223, 78 S.Ct. at 201. Similarly, in this case the insured owes the plaintiff damages from malpractice; California has an interest in providing the plaintiff with a forum against the insurance company for payment. It may be true that California’s interest depends upon the substantive claim of the applicability of Section 11580 to the insurance policy. To that extent the determination on the merits and the issue of jurisdiction are coextensive. However, because we find California’s insurance laws applicable in this case,
 
 see infra
 
 pp. 1402-04, California’s interest in this litigation strongly supports a finding of personal jurisdiction.
 

 Conflict with a Foreign State’s Sovereignty.
 
 The Fund argues that the risk of conflict with a foreign sovereignty is substantial, undermining the reasonableness of personal jurisdiction.
 
 See Pacific Atlantic,
 
 758 F.2d at 1330. However, we have previously held that “this factor is not dis-positive because, if given controlling
 
 *1402
 
 weight, it would always prevent suit against a foreign national in a United States court.”
 
 Gates Learjet Corp. v. Jensen,
 
 743 F.2d 1325, 1333 (9th Cir.1984),
 
 cert. denied,
 
 — U.S. -, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). Moreover, any clash between a forum’s law with the “fundamental substantive social policies” of another state may be resolved through choice of law rules, not jurisdiction,
 
 Burger King,
 
 105 S.Ct. at 2185. The fact that California might apply its own law against the Fund “should not complicate or distort the jurisdictional inquiry.”
 
 Keeton v. Hustler Magazine,
 
 465 U.S. at 778, 104 S.Ct. at 1480. In
 
 Keeton
 
 the defendant complained that the limitation period had run in all states except New Hampshire, the forum state, and that to allow personal jurisdiction there would be unfair. The Court held that “[t]he question of the applicability of New Hampshire’s statute of limitations to claims for out-of-state damages presents itself in the course of litigation only after jurisdiction over respondent is established....”
 
 Id.
 

 Burden of Defense.
 
 The Fund also states that because the distance between the Cayman Islands and California is great, the burden of defense is considerable. However, it gives no evidence as to the extent of that burden. Indeed, the issue in this case is primarily one of law, i.e. whether Section 11580 can be applied to the insurance policy. There is no dispute about the policy terms (as they are written) or the fact that Dr. McClure was insured by the Fund.
 

 Efficiency of Resolution.
 
 Finally, the Fund claims that California would be an inefficient forum, because of the possibility of the unenforceability of a judgment against a foreign corporation. However, the Fund has posted a bond insuring the collectibility of any judgment which Hais-ten may recover. Moreover, there exists no threat that sovereign immunity will bar enforcement of a California judgment against the Fund, since the Fund is a purely private corporation.
 
 Compare Insurance Company of North America v. Marina Salina Cruz,
 
 649 F.2d 1266, 1273 (9th Cir.1981) (fact that Mexican ambassador asserted sovereign immunity with respect to an American judgment against a shipyard owned by Mexico bears on judicial efficiency in assessing reasonableness of jurisdiction),
 
 with Gates Learjet Corp.,
 
 743 F.2d at 1333 (interest of the Phillipines in resolving disputes involving its citizens not dispositive).
 

 Because the Fund purposefully directed its activities toward California residents, and because the Fund has not shown a compelling reason that the exercise of jurisdiction in California would be unreasonable, we hold that the district court properly exercised jurisdiction over the Fund.
 

 Ill
 

 APPLICABILITY OF SECTION 11580
 

 Haisten’s substantive claim is that California insurance law requires that the Fund’s contract of insurance with Dr. McClure include “[a] provision that the insolvency or bankruptcy of the insured will not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of such policy.” Cal.Ins.Code § 11580(b)(1) (West Supp. 1985). If applicable, Section 11580 would give Haisten, a third party victim, a right of action against the Fund, in order to satisfy his judgment against Dr. McClure up to the amount of indemnification specified in the policy.
 

 We review a district court’s interpretation of state law
 
 de novo. The Union Central Life Insurance Co. v. Wernick,
 
 777 F.2d 499, 501 (9th Cir.1985).
 

 The contract of insurance specifies that disputes regarding the contract should be governed under Cayman Island laws. In diversity cases, federal courts apply the conflict-of-law principles of the forum state.
 
 S.A. Empresa de Viacao Aerea Rio Grandense v. Boeing Company,
 
 641 F.2d 746, 749 (9th Cir.1981). In California, a court is not bound by a contract’s choice of law provision if strong public policy requires the application of
 
 *1403
 
 California law.
 
 Hall v. Superior Court,
 
 150 Cal.App.3d 411, 197 Cal.Rptr. 757, 761 (4th Dist.1983);
 
 Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
 
 20 Cal.App.3d 668, 97 Cal.Rptr. 811, 814 (1st Dist.1971). Protection of California residents from the potential risk of injury thought to be created by insurance and from the unscrupulous practices of insurance companies which profit from premiums from California constitute sufficient interest to apply California law.
 

 Section 11580 applies to policies “issued or delivered to any person in” California, which insure “against loss or damage resulting from liability for injury suffered by another person.” Cal.Ins.Code § 11580(a) (1). The district court concluded as a matter of law that the Fund’s issuance and delivery of a policy to Dr. McClure, at the time a California resident, through his attorney-in-fact in the Cayman Islands, constituted issuance and delivery within the meaning of Section 11580. While the Fund complains that this conclusion alone cannot support personal jurisdiction, it does not contest the conclusion itself. Thus, the issue of applicability centers on whether the Fund’s contract to indemnify Dr. McClure against loss (money paid) resulting from a judgment of malpractice liability is within the scope of the statute.
 

 The Fund strongly argues that a distinction exists between indemnity against actual loss and indemnity against liability, and that Section 11580 applies only to the latter. The Fund describes its policies as indemnity against loss, specifically, a reimbursement of sums paid by doctors as a result of malpractice liability. The Fund does not assume the liability; rather, its obligations accrue upon the occurrence of the physicians’ actual loss of property (here, money paid). The Fund argues that to require it to assume liability would collapse true indemnity into liability insurance, not only against public policy, but in contradiction of statutes which provide for the existence of true indemnity insurance.
 

 The Fund, however, neglects the history of statutes like Section 11580, and attempts instead to second guess their purpose and sensibility. The California Supreme Court explained the problem which the predecessor to Section 11580 attempted to address:
 

 Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay.
 

 Hynding v. Home Ace. Ins. Co.,
 
 214 Cal. 743, 7 P.2d 999, 1001 (1932) (quoting
 
 Coleman v. New Amsterdam Casualty Co.,
 
 247 N.Y. 271, 160 N.E. 367, 369 (1928)
 
 [3]
 
 ). The effect of the statute was to “ ‘give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied.’ ”
 
 Id.
 
 Clearly, Haisten, a claimant injured from the insured’s malpractice, falls within the scope of the statute.
 

 The Fund argues that such a finding would eliminate indemnity insurance, in effect transforming all indemnitors into liability insurers. However, Section 11580 is limited to policies insuring against loss or damage from “liability for
 
 injury suffered by another person
 
 ” and from the operation of vehicles. The Fund’s contention that indemnity against loss from liability for property damage would be forbidden is incorrect. While it is true that the statute requires policies to state that “an action based upon ... property damage ... may be brought against the insurer,” the only policies to which this applies are those in
 
 *1404
 
 volving personal injury and the operation of vehicles.
 

 The policy behind the statute affirms this interpretation. The statute is aimed not only at giving injured victims a remedy for an insured’s misconduct, but also at preventing insurance companies from avoiding responsibility for the reduced degree of care taken by those whom the company insures. The Supreme Court recognized that someone who is protected by insurance will have in mind a sense of immunity from liability, increasing the possible danger that the insured will exercise a lesser degree of care had he or she not been insured.
 
 Merchants Mutual Automobile Liability Insurance Co. v. Smart,
 
 267 U.S. at 129-30, 45 S.Ct. at 321. Because the public (in particular, the victim) bears the burden of this greater risk of injury, the state requires that the indemnity that saves the insured inure to the benefit of the person who is injured.
 
 Id.
 

 The Fund argues that because the state does not require doctors to obtain malpractice liability insurance, we should not create such insurance through interpretation of Section 11580. However, interpreting Section 11580 to apply to the indemnity contract in this case does not create mandatory malpractice liability insurance. Doctors are free not to have such insurance. It is only when they do obtain insurance that the statute applies. Indeed, the statute has most often been applied to automobile insurance policies, which are not mandatory in Californa.
 

 The Fund relies heavily on
 
 San Pedro Properties, Inc. v. Sayre & Toso, Inc.,
 
 203 Gal.App.2d 750, 21 Cal.Rptr. 844 (2d Dist.1962). In
 
 San Pedro,
 
 an engineering firm purchased an indemnity policy against loss from liability for surveying and/or civil engineering errors and omissions. The plaintiff claimed that work had been performed negligently, sued for damages, and received a judgment in its favor. The plaintiff then brought action against the insurer for satisfaction of the judgment. The court held that the insurer was not obligated because there was no showing that the insured had ever paid the judgment. 21 Cal.Rptr. at 848. The Fund contends that
 
 San Pedro
 
 represents California’s acknowledgement of the existence of indemnity for loss from liability and squarely applies in this case. However, in
 
 San Pedro,
 
 the Section 11580 issue never arose; there was no allegation that the insured was bankrupt or insolvent. Moreover,
 
 San Pedro
 
 concerned indemnity against loss from liability for property damage, not personal injury.
 

 To construe Section 11580 as exempting policies which indemnify insureds for loss (of money) resulting from personal injury liability would allow insurers to escape regulation and thwart clearly articulated and long-standing state interest by careful construction of their insurance transactions. We therefore hold Section 11580 applicable to a policy indemnifying loss from liability for personal injury.
 

 IV
 

 CONSTITUTIONALITY OF APPLYING CALIFORNIA LAW
 

 The Fund contends that the application of Sections 11580 and 1619 of the California Insurance Code to a contract entered into and performed in the Cayman Islands gives unconstitutional extraterritorial effect to California laws. Specifically, the Fund argues that because the Due Process Clause guarantees the right of a state citizen to contract outside his state for insurance on his property and places limits on the ability of a state to control persons and activities outside its borders, state insurance laws cannot serve to rewrite that contract, exposing the company to greater risk and liability for attorney’s fees.
 

 The constitutionality of applying California’s insurance statutes to a contract of insurance transacted outside the state is a question of law, which this court may review
 
 de novo. See United States v. McConney,
 
 728 F.2d 1195, 1201 (9th Cir.),
 
 cert. denied,
 
 — U.S. -, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 

 
 *1405
 
 Under the Due Process Clause, a state may not restrict or control the obligation of contracts executed and to be performed outside of the state.
 
 Alaska Packers Assn. v. Industrial Accident Commission of California,
 
 294 U.S. 532, 540, 55 S.Ct. 518, 520, 79 L.Ed. 1044 (1935). In
 
 Watson v. Employers Liability Assurance Corp., Ltd.,
 
 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954), the Supreme Court affirmed Louisiana’s power to alter an insurance contract which was negotiated and issued by a foreign insurer in a foreign jurisdiction.
 
 [4]
 
 The Court noted that some contracts which are made locally, affecting nothing but local affairs, “may well justify a denial to other states of power to alter those contracts.”
 
 Id.
 
 at 71, 75 S.Ct. at 169. However, recognizing the effects that some contracts have on other jurisdictions, in light of the “modern practice of conducting widespread business activities throughout the entire United States,” the Court held that “more states than one may seize hold of local activities which are part of multi-state transactions and may regulate to protect interests of its own people, even though other phases of the same transactions might justify regulatory legislation in other states.”
 
 Id.
 
 at 72, 75 S.Ct. at 169. In affirming the exercise of state power, the Court pointed to the state interest in providing remedies for recovery of damages.
 

 The case at bar is analogous to
 
 Watson
 
 to the extent that we are presented with an insurance contract with intended effects in California. Indeed, Haisten’s case is stronger because the contract concerns the practice of medicine specifically in California. In
 
 Watson,
 
 the policy covered transitory risks, i.e. tort liability which might have occurred anywhere in the United States or Canada.
 

 Moreover, California’s interest in ensuring that tort victims be able to reach insurers on a contract to insure services provided in the state is a strong factor supporting California’s power to regulate.
 
 See Hoopeston Canning Co. v. Cullen,
 
 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777 (1943). Clearly, California has a manifest interest in requiring that insurance companies, who profit from the premiums derived from the California insurance market, honor claims owed to state residents by liable, but bankrupt, insureds. Affirming the legitimacy of such a state policy, the Supreme Court reasoned that since it is the public, “whose lives and limbs are exposed,” the indemnity which saves the insured “should certainly inure to the benefit of the person who thereafter is injured.”
 
 Merchants Mutual Automobile Liability Insurance Co. v. Smart,
 
 267 U.S. 126, 129-30, 45 S.Ct. 320, 321, 69 L.Ed. 538 (1925). The Court also noted the state interest in preventing collusion between an insured and insurer. 267 U.S. at 130, 45 S.Ct. at 321.
 

 While California has not sought to prohibit the making of insurance contracts beyond its borders, it claims an interest in the risks attendant to these contracts which affect specifically California residents and the provision of services specifically in California.
 
 See Osborn v. Ozlin,
 
 310 U.S. 53, 62, 60 S.Ct. 758, 761, 84 L.Ed. 1074 (1940). California's regulations have no effect on anything the Fund may want to do in the Cayman Islands or anywhere other than California.
 
 See Robertson v. California,
 
 328 U.S. 440, 461, 66 S.Ct. 1160, 1171, 90 L.Ed. 1366 (1946).
 

 The Fund argues that California law should not apply because the Fund does not “do business” in California. However, as we have shown above the formalities of contract formation and execution are not dispositive where the substance and circumstances surrounding the transaction indicate that a company is doing business in the regulating state.
 
 See Hoopeston Can
 
 
 *1406
 

 ning Co.,
 
 318 U.S. at 317, 63 S.Ct. at 605. Clearly, the intended object of all of the Fund’s activity is not the mere signing of a contract, but the business of providing insurance to many California physicians concerning services performed in the state.
 

 Moreover, the test is not whether a foreign party does business in the regulating state, but rather, whether there is a sufficient connection between the object regulated and the forum state.
 
 See Hartford Accident and Indemnity Co. v. Delta and Pine Land Co.,
 
 292 U.S. 143, 150, 54 S.Ct. 634, 636, 78 L.Ed. 1178 (1934);
 
 Watson,
 
 348 U.S. at 71, 75 S.Ct. at 169. Here, the insured (Dr. McClure), the injured party (Haisten), and the object insured (the practice of medicine in California) were specifically linked to California. The analysis applied is similar to that used in determining whether a state has personal jurisdiction over a foreign defendant. Indeed, for the reasons we hold that the Fund is amenable to suit in California on the contract of insurance, we find that it is also subject to California law with respect to that contract.
 
 See International Shoe Co. v. Washington,
 
 326 U.S. 310, 321, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945) (holding that “[t]he activities which establish its ‘presence’ subject it alike to taxation by the state and to suit to recover the tax”);
 
 Travelers Health Association v. Virginia,
 
 339 U.S. 643, 650, 70 S.Ct. 927, 931, 94 L.Ed. 1154 (1950) (concluding that analysis of the due process impairment of contract issue is “essentially the same as” the due process jurisdictional issue). Regulations designed to accomplish the state interests which support personal jurisdiction “can not be attacked merely because they affect business activities which are carried on outside the state.”
 
 Id.
 
 (quoting
 
 Hoopeston Canning Co. v. Cullen,
 
 318 U.S. at 320-21, 63 S.Ct. at 606-07).
 

 The Fund points to a line of cases in which the Supreme Court has invalidated the application of a forum state’s law to contracts made wholly outside of the state’s borders.
 
 See, e.g., State Board of Insurance v. Todd Shipyards,
 
 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962);
 
 Allgeyer v. Louisiana,
 
 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897). However, these cases may be distinguished by the relative lack of contact by the insurer with the. forum state. In
 
 Todd Shipyards,
 
 only the risk insured was located in the forum state; both the insurer
 
 and the insured
 
 were located elsewhere. In
 
 Allgeyer,
 
 the property insured was transitory, i.e. cargo to be shipped out of the forum state. Moreover, the reasoning in
 
 Allgeyer,
 
 which emphasizes the place where the contract was executed and technically performed, has been criticized as a “conceptualistic discussion of theories of the place of contracting or of performance.”
 
 Hoopeston Canning Co.,
 
 318 U.S. at 316, 63 S.Ct. at 604. Rather, a more flexible analysis, looking to the interest of the forum state in regulation has been applied.
 
 See, e.g., Travelers Health Association v. Virginia,
 
 339 U.S. at 648, 650, 70 S.Ct. at 929, 931;
 
 Hoopeston Canning Co.,
 
 318 U.S. at 316, 63 S.Ct. at 604.
 

 Thus, in light of the strong state interest in regulating insurance which concerns the “lives and limbs” of the public, and the fact that the intended object of the Fund’s activities is to provide and profit from the sale of such insurance in California, we conclude that the application of Section 11580 to the Fund’s contract of insurance is constitutional.
 

 V
 

 APPLICABILITY OF SECTION 1619
 

 The district court awarded attorney’s fees pursuant to Gal.Ins.Code § 1619 which provides that attorney’s fees may be awarded if an insurer has “failed for thirty days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, and it appears to the court that such refusal was vexatious and without reasonable cause.”
 
 See Songer v. State Farm Fire & Casualty Co.,
 
 106 Ill.App.3d 141, 62 Ill.Dec. 150, 435 N.E.2d 948 (1982) (defining vexatious and unreasonable conduct). The
 
 *1407
 
 district court found the Fund’s conduct vexatious and without reasonable cause within the meaning of Section 1619. The Fund’s arguments to avoid California jurisdiction and regulation do not have the strength and complexity necessary to avoid such a finding. This case involves an insurance company set up by California doctors to insure those same doctors. The Fund has attempted to avoid contract liability under California law while at the same time benefiting from the income derived from California premiums. The district court did not abuse its discretion in awarding attorney’s fees.
 

 VI
 

 CONCLUSION
 

 The district court judgment, including the award of attorney’s fees, is AFFIRMED.
 

 [1]
 

 . Haisten argues that he need only establish a prima facie case supporting in personam jurisdiction, citing
 
 Pacific Atlantic Trading Company v. M/V Main Exp.,
 
 758 F.2d 1325, 1327 (9th Cir.1985). However,
 
 Pacific Atlantic
 
 concerned a motion by the defendant to dismiss for lack of jurisdiction. Here, the defendant Fund is challenging a judgment entered against it on the merits.
 
 See Forsythe v. Overmyer, 576
 
 F.2d 779, 781 (9th Cir.),
 
 cert. denied,
 
 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). Thus, Haisten bears the full burden of proof by preponderance of the evidence, as if the case had gone to trial.
 
 Id.
 

 [2]
 

 .
 
 The Fund presented evidence challenging any assertion by Haisten that any physical part of the insurance transaction occurred in California. Therefore, to prevail in this appeal of a grant of summary judgment, Haisten must show the existence of personal jurisdiction for reasons apart from the formal transaction.
 

 [3]
 

 . In
 
 Coleman v. New Amsterdam Casualty Co.,
 
 the defendant insurer issued a policy of insurance “indemnifying the assured against loss from the liability imposed by law ... as a result of any error or mistake ... in the preparation of drugs or medicines or in filling any prescription or order for the same.” 160 N.E. at 388. The plaintiff, a victim of an improperly filled prescription, was awarded judgment on a suit for damages. The insured, a drug store, was adjudged a bankrupt and did not pay the damages. The plaintiff sought satisfaction against the insurer under a New York statute similar to Section 11580.
 

 [4]
 

 . Under Louisiana law, contracts of insurance were deemed to include a provision which allowed a tort victim to bring an action directly against an insurer without first obtaining judgment against the tortfeasor. While the case at
 
 bar
 
 does not concern a so called "direct action” statute, it nevertheless deals with a similar provision, which allows residents to sue insurers in California where tortfeasors are insolvent or bankrupt.