Decided April 16, 1989

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | | |
|---|---|---|
| DAVID M. SABLAN, | ) | DCA NO. 88-9008 |
| | ) | CIVIL ACTION NO. 87-119 |
| Plaintiff/Appellee, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| SHAMEEM QUARASHI, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |

Attorney for Appellant:  ROBERT L. KEOGH
            Law Office of Keogh & Butler
            P.O. Box GZ
            Agana, Guam, 96910

            JESUS C. BORJA
            Borja & Salas
            P.O. Box 1309
            Saipan, MP 96950

Attorney for Appellee:   JOEL J. BERGSMA
            Fitzgerald, Herald & Bergsma
            P.O. Box 909
            Saipan, MP 96950

BEFORE: DUENAS*, HILL,** and MUNSON, District Judges.

---

\*  The Honorable Cristobal C. Duenas, Senior Judge, United States
  District Court for the Territory of Guam, sitting by
  designation.

\*\*  The Honorable Irving·Hill, Senior Judge, United States
  District Court for the Central District of California, sitting
  by designation.

DUENAS, Senior Judge

Defendant appeals the trial court's denial of his motion for dismissal of the complaint for lack of *in personam* jurisdiction. For the following reasons, we affirm.

Defendant/appellant Shameen Quarashi is a Pakistani citizen who resides in Manila, Philippines. In August, 1985, he negotiated an exclusive marketing export agreement with a company called Cascade Resources. Under the agreement, Quarashi and Associates were given the exclusive right to export bottled water produced by Vichy, a company of the Perrier group.

The record does not reflect how plaintiff/appellee David M. Sablan became aware of Quarashi's exclusive agreement, but in January, 1986, Sablan met Quarashi in Manila to discuss the possibility of Sablan becoming the wholesale marketer in Micronesia. Following the meeting, Quarashi sent a proposed agreement to Sablan in Saipan. This proposal set out various terms and conditions necessary in order for Sablan to become the wholesale marketing agent of the bottled water for Micronesia. First, Sablan was required to purchase, for $22,500, 10% of Exxel International Ltd. (Exxel[International]), described by Quarashi as the nominee company to distribute the bottled water under the Cascade agreement. Additionally, Quarashi required that in consideration for Sablan's appointment as the exclusive "marketing agent", Quarashi would become Sablan's equal partner in any organization formed by Sablan to distribute the water. Sablan signed the agreement indicating acceptance of the terms, in

**765**

conformance with Quarashi's instruction. Sablan wire transferred $22,500 to an Arizona bank account in Quarashi's name.

In February, 1986, Quarashi traveled to Saipan to assist Sablan in forming Exxel Trading and Development Corporation (Exxel[Saipan]) to carry out the distribution of the water as well as several other business ventures in Micronesia. His stay lasted five days. . While on Saipan, Quarashi and Sablan met with a representative of Reynolds International, Inc. and also with the Executive Director of the Mariana Islands Housing Authority (MIHA) to explore the possibility of building homes in Saipan. Exxel(Saipan) was chartered in the Commonwealth in March, 1986. Quarashi was an incorporator of Exxel(Saipan) and later became the chairman of the board, a shareholder (43% of outstanding stock), and the treasurer.

In March, 1986, Quarashi met with Sablan on Guam to discuss Exxel(Saipan) projects. Quarashi asked Sablan to loan him $28,000 at this meeting. Sablan agreed and when he returned to Saipan later that week he wire transferred the money to Quarashi's Arizona bank account.

Quarashi returned to Saipan for five days in March, 1986, on Exxel(Saipan) business. Sablan and Quarashi discussed marketing the bottled water, building houses for MIHA, and bidding on the Guam Power Authority petroleum contract. Quarashi gave Sablan a disclosure statement regarding the purchase of the Exxel(International) stock for which Sablan had previously paid $22,500.

In March, April, and May of 1986 Quarashi made numerous phone calls to Sablan. He also incurred hundreds of dollars in telex expenses communicating with Sablan. In May, 1986, Quarashi traveled to Guam for additional meetings with Sablan regarding the bid for the Guam Power Authority petroleum contract.

In October, 1986, Sablan met Quarashi in Manila. Quarashi executed a promissory note for $28,000 and agreed to return the $22,500 which Sablan had paid for the Exxel (International) stock but had never received. Quarashi subsequently sent Sablan two postdated checks, one for $22,500, and the other for $28,000, neither of which were honored by Quarashi's bank. This lawsuit followed.

## STANDARD OF REVIEW

The appellate court reviews de novo the trial court's dete.mination that it has in personam jurisdiction over a defendant when the underlying facts are undisputed. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986).

## ANALYSIS

The due process standards inherent in American jurisprudence require that for a court to invoke its jurisdiction over a defendant that defendant must have made minimum contacts with the forum. International Shoe Co. v. Washington, 326 U.S. 310 (1945). As the Supreme Court stated in International Shoe, minimum

767

contacts are necessary in order not to "offend traditional notions of fair play and substantial justice." Id. at 316. Substantial, continuous, and systematic ties with the forum support a finding of general jurisdiction over a defendant. Haisten v. Grass Valley Medical Reimbursement Fund Ltd., 784 F.2d 1392, 1396 (9th Cir. 1986). When defendant's contacts do not support a finding of general jurisdiction, the court may invoke special jurisdiction over a defendant in a specific case if the defendant's contacts with the forum are such that due process is complied with. Shute v. Carnival Cruise Lines, No. 87-4063, Slip Op. (9th Cir. December 12, 1988). The Ninth Circuit has adopted a three-prong test to determine whether a court may exercise special jurisdiction over a defendant:

1. The nonresident defendant must do some act or consummate some transaction with the forum or its residents or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2. The claim must be one which arises out of or relates to the defendant's forum related activities.

3. Exercise of jurisdiction must be reasonable. Shute v. Carnival Cruise Lines, 87-4063; Haisten, 784 F.2d at 1397.

The lack of physical presence in the forum is not dispositive. Burger King v. Rudzewicz, 471 U.S. 462, 477 (1985). The Supreme Court noted in Burger King that modern business practices obviate the need for actual presence in the jurisdiction

when the same results can be accomplished by wire communications and the mail. Id. at 476.

Quarashi contends that the court erred in finding that his contacts with the Commonwealth were sufficient for the Court to exercise specific jurisdiction over him. He argues that most of the business meetings with Sablan were conducted someplace other than Saipan and that the money transfers occurred in Arizona and Manila. Further, he maintains that he did not purposefully avail himself of the protections and benefits of Commonwealth laws. Finally, he argues that subjecting him to the jurisdiction of the Commonwealth Trial Court is unreasonable under the circumstances.

Becoming an incorporator, director, shareholder, and officer of a Commonwealth corporation formed for the purpose of conducting business in the Commonwealth constitute purposeful acts in which Quarashi availed himself of the privilege of conducting activities in the Commonwealth. Quarashi's purpose of starting Exxel(Saipan) was to carry out his plan of marketing bottled water under the exclusive arrangement he had with Cascade. His purported sale to Sablan of stock in Exxel(International) conditioned on him becoming a partner in Sablan's Commonwealth business was in furtherance of achieving that result. Exxel(Saipan) was incorporated under the laws of the Commonwealth which required that it be registered by the registrar of corporations and that its certificate be signed by the Governor. Quarashi's argument under the first prong of the three part test set forth in Shute fails.

The second test is whether the claim arises out of

Quarashi's forum-related activities. Quarashi argues that none of his forum-related activities involved the contracts which Sablan has brought suit on. According to Quarashi, the sale of the Exxel(International) shares and his default on the promissory note had nothing to do with his participation in Exxel(Saipan).

In 1985, Quarashi obtained the exclusive rights from Cascade to distribute its bottled water. Quarashi formed Exxel(International) to carry out this business. Sablan paid Quarashi $22,500 for Exxel(International) stock and agreed to start a business on Saipan with Quarashi as an equal partner. This was in exchange for Quarashi's promise to make Sablan's business the exclusive Micronesian distributor of Cascade's bottled water. Absent this arrangement, Sablan would not have purchased Exxel(International) stock nor would he have loaned Quarashi $28,000. In fact, the loan repayment deadline was based upon a response to the bid on the Guam petroleum contract which had been submited by Exxel(Saipan). Quarashi cannot separate these transactions into individual periods of time and isolate each as if it were totally unrelated to the others. All of Quarashi's dealings with Sablan were interrelated and focused on business conducted or anticipated to be conducted in the Commonwealth by Exxel(Saipan). The second prong of the test is satisfied based on this analysis.

The final inquiry under Shute is whether the exercise of jurisdiction is reasonable. The Ninth Circuit has set out seven factors to be considered when determining the reasonableness of

**770**

exercising jurisdiction over a defendant. Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1332 ((9th Cir. 1984); accord Insurance Company of North America v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

1. The extent of the purposeful interjection into the foreign jurisdiction;

2. The burden of the defendant defending in the forum;

3. The extent of conflict with the sovereignty of the defendant's state;

4. The forum jurisdiction's interest in adjudicating the dispute;

5. The most efficient judicial resolution of the controversy;

6. The importance of the forum to plaintiff's interest in convenient and effective relief; and

7. The existence of an alternative forum.

As the trial court found, Quarashi came to Saipan and formed a corporation to conduct business in Saipan and the rest of Micronesia. He traveled to Saipan twice, for a total of about ten days, to conduct business on the island. He asked Sablan to loan him $28,000 which Sablan sent to him from Sablan's Saipan bank account. He regularly communicated with Sablan in Saipan via telephone and telexes from his residence in Manila. These facts support the trial court's finding that Quarashi purposefully interjected himself into the Commonwealth.

The next inquiry goes to the burden placed on Quarashi if

he is forced to defend this suit in the Commonwealth. Quarashi resides in Manila and has been able to travel to Saipan on at least two occasions to conduct business. He has traveled to Guam on several other occasions for the purpose of conducting Exxel(Saipan) business. Assuming his presence is required for trial, it is not an unreasonable burden to hold the trial in Saipan. Regular commercial jet service is available from Manila to Saipan for a fraction of the amount at stake in this suit. Competent legal counsel is also available. Any burden on Quarashi to defend this suit in the Commonwealth is not so great as to support dismissal.

The third issue involves the conflict, if any, between either Pakistan, where Quarashi is a citizen, or the Philippines, where Quarashi resides, and the Commonwealth. Neither this Court nor the trial court was presented with any evidence to suggest that Pakistan or the Philippines object to citizens or residents being subjected to suit in a foreign jurisdiction in which that person chooses to do business. A contrary assumption would run counter to common sense. It would not seem in a country's best interest to protect individuals who allegedly fail to honor their obligations. Arguably, this would put a chill on business relationships for all of its citizens. Absent any evidence that Pakistan or the Philippines had any objection to the proceeding, the trial court correctly concluded that there was none.

The fourth inquiry goes to the Commonwealth's interest in adjudicating this dispute. Sablan is a citizen and resident of the Commonwealth. He and Quarashi incorporated Exxel(Saipan) under the

772

laws of the Commonwealth and conducted business in the Commonwealth. Sablan wire transferred $28,000 from a Saipan bank to Quarashi's bank Account in Arizona. The Commonwealth has a substantial interest in permitting Sablan to redress in its courts what he has alleged is a wrong committed at least in part in the Commonwealth.

The fifth inquiry is whether the Commonwealth Trial Court is the most efficient forum to resolve the controversy. As Sablan points out in his brief, this motion was filed after discovery had been completed and just prior to the commencement of the trial. Sablan filed his complaint on February 20, 1987. Quarashi filed his motion to dismiss a year later. Quarashi suggests on appeal that either Arizona or Manila would be a more efficient forum to resolve this dispute. Conceivably had the trial court dismissed the action and forced Sablan to file in another forum, Quarashi would have been able to prolong the litigation for another year and then moved to dismiss in that forum for lack of jurisdiction. Neither Arizona nor Manila has a substantial interest in resolving a contract dispute brought by a Commonwealth citizen against a Pakistani citizen involving a Commonwealth corporation. The Commonwealth Trial Court is the most efficient forum to resolve this dispute.

The sixth issue is the importance of the Commonwealth to Sablan's interest in convenient and effective relief. Quarashi concedes in his brief that the Commonwealth is a convenient forum for Sablan to obtain relief. He disputes that it provides

**773**

effective relief, however, because he implies that Sablan will still have to go to the Philippines to enforce the judgement. This may or may not be true. Quarashi may choose to pay the judgment without further proceedings. Even if he does not, Sablan may be able to arrange from Saipan to have a Filipino attorney enforce his Commonwealth judgment in the Philippines. In any event, from Sablan's standpoint, the Commonwealth is the most convenient and effective forum for relief.

The final inquiry goes to the existence of an alternative forum; Quarashi suggests either Arizona or the Philippines. The only involvement this case had to Arizona was a bank account in Quarashi's name. Neither party traveled there nor did any business take place there. The business the parties intended to engage in was to be conducted in Micronesia. Sablan did wire money to Quarashi's Arizona bank account. But it is not reasonable that that fact alone makes Arizona an appropriate forum for this litigation.

Quarashi also suggests that the case should be heard in the Philippines. Quarashi lives in the Philippines and Sablan traveled there on occasion to conduct business related to this dispute. These factors would support Quarashi's suggestion that the case could be heard in the Philippines. But this seventh inquiry is of significance only if the trial court determines in the first instance that the trial court is an unreasonable forum for the dispute. Corporate Inv. Business Brokers v. Melcher, 824 F.2d 786, 791 (9th Cir. 1987). This is not the case here and this

**774**

issue is also resolved in Sablan's favor.

For all these reasons, the trial court is AFFIRMED.

_____
Judge Cristobal C. Duenas

_____
Judge Alex R. Munson

_____
Judge Irving Hill