**ABRAMS SHELL, et al., Plaintiffs,**

v.

**SHELL OIL COMPANY,
et al., Defendants.**

**No. CV01–02120ABCJWJX.**

United States District Court,
C.D. California.

Sept. 18, 2001.

**1100**

John M. O'Quinn, O'Quinn & Laminack, Houston, TX, Paul Rosen, Robert Steinberg, Jensen, Rosen & Steinberg, Houston, TX, Thomas Bleau, Martin Fox, Bleau, Fox & Associates, Los Angeles, CA, for plaintiff/petitioner/appellant.

David Destino, Nigel Jacques, Baker & Hostetler, Los Angeles, CA, J. Gregory Copeland, J. Michael Baldwin, David Rodi, Baker Botts, LLP, Houston, TX, for defendant/respondent/appellee.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE TO THE SOUTHERN DISTRICT OF TEXAS**

COLLINS, District Judge.

Shell-branded petroleum franchise dealers have brought a putative class action on behalf of an alleged nationwide class of similarly-situated franchisees, asserting that Defendants (their franchisors and affiliates) violated the Petroleum Marketing Practices Act ("PMPA"). Defendants have filed three motions to dismiss: (1) to dismiss and/or transfer on the basis of improper venue (the "Venue Motion"); (2) to dismiss Defendant Motiva for lack of proper personal jurisdiction (the "Jurisdiction Motion"); and (3) to dismiss Defendants Shell and Equiva for failure to state a claim under Rule 12(b)(6) (the "Rule 12(b)(6) Motion"). These motions are appropriate for submission without oral argument. *See* Fed.R.Civ.Pro. 78; Local Rule 7.11. Accordingly, the hearing on November 5, 2001 is hereby VACATED. The Court GRANTS the Venue Motion, and ORDERS this case TRANSFERRED to the Southern District of Texas. The Court need not reach the other two motions.

**I. BACKGROUND**

On March 6, 2001, seven named Plaintiffs located in at least four different judicial districts throughout the United States filed this putative class action Complaint in this Court. All of the Plaintiffs are Shell-branded gasoline franchise dealers. Four named Plaintiffs operate stations located in the Central District of California: ABRAMS SHELL ("Abrams") in Culver City, California; TOWN CENTER SHELL ("Town Center") in Cerritos, California; PALM SPRINGS SHELL ("Palm Springs") in Cathedral City, California; and FOUAD DAGHER ("Dagher"), whose two stations are located in Alhambra and

Downey, California, respectively. The other three named Plaintiffs operate stations located in at least three other judicial districts: LORNA RATONEL ("Ratonel"), with two stations in La Mesa and Chula Vista, California, both in the Southern District of California; GARNERVILLE SHELL, INC. ("Garnerville") in Garnerville, New York in the Southern District of New York; and HOUDA, INC. ("Houda"), which operates stations in either or both the Eastern District of Texas and/or the Northern District of Texas.[1] These seven named Plaintiffs will hereinafter be collectively called "Plaintiffs."

The Complaint names a total of four Defendants: SHELL OIL COMPANY ("Shell"); EQUILON ENTERPRISES, LLC ("Equilon"), MOTIVA ENTERPRISES, LLC ("Motiva"); and EQUIVA SERVICES, LLC ("Equiva") (collectively, "Defendants") Though divided into three separate "claims for relief" for different possible remedies (i.e., equitable/injunctive, damages, and declaratory relief), the Complaint states a single PMPA claim.

The alleged factual background underpinning this Complaint has been the subject of other civil actions (both under the PMPA and under state law) by similarly-situated litigants before this Court as well as before one or more courts in Texas.[2] This factual background is well known to these parties and this Court, and need not be repeated in detail here. In brief, Plaintiffs are Shell-branded franchisees who hold PMPA petroleum marketing franchises originally entered into between Plaintiffs and Shell. In 1998, Shell and non-party Texaco, Inc. ("Texaco") formed Equilon as a joint venture, combining their respective western and mid-western refining and marketing assets. At the same time, Shell, Texaco, and another non-party, Saudi Refining, Inc. ("SRI") formed a second joint venture, Motiva, to which they each transferred their refining and marketing assets from the eastern and Gulf Coast states within the United States. The two joint ventures, Equilon and Motiva, soon after commenced operation of a jointly-owned separate entity, Equiva, which is jointly owned by Equilon and Motiva, and which acts as their research, management, and services arm.

As part of the formation of the joint ventures, in 1998 all of the franchisees who had previously held PMPA franchises directly with Shell (or Texaco or SRI) had their existing PMPA agreements assigned to either Equilon or Motiva, depending on their geographical location.

Thus, Plaintiffs Abrams, Town Center, Palm Springs, Dagher, and Ratonel all became Equilon franchisees (still under the Shell brand name) in 1998, while at the same time Plaintiffs Garnerville and Houda became Shell-branded Motiva franchisees. Plaintiffs claim that from this point onward began a program of harassment, unfair treatment, and attempts to either

---

1. The address given in the Complaint is for a station in Plano, Texas, which is in the Eastern District of Texas. Defendants claim, however, that the address given in the Complaint is the home address of the principal of the Houda corporation, and that stations run by this entity are located in both the Eastern and Northern Districts.

2. One of these cases, in which a large number of Shell-branded franchise dealers located in California also sought relief under the PMPA on the basis of substantially the same or similar allegations, is *Coast Village, Inc., et al. v. Equilon Enterprises, LLC,* CV 00-05498 ABC (JWJx). This Court recently concluded a court trial of the PMPA claim(s) in this case, at the conclusion of which it issued a lengthy Findings of Fact and Conclusions of Law making specific findings on many of the same allegations which underpin the present Complaint. In that case, this Court concluded that the plaintiffs failed to make out a claim under the PMPA for unlawful non-renewal of their franchises.

drive Plaintiffs out of business entirely and/or to "convert" Plaintiffs' stations to company-operated locations, which ultimately culminated in the promulgation and distribution of "new dealer paper" (i.e., renewal franchise agreements) to dealers in 1999 and 2000. *See* Complaint ¶¶ 28–66; Exhibits A to D to Complaint. On the basis of these allegations, Plaintiffs claim PMPA violation(s). These named Plaintiffs claim to be representative of a general class of Shell-branded franchise dealers subjected to PMPA violations by Equilon and/or Motiva. *See* Complaint ¶¶ 14–21. They claim to stand in for "thousands" of Shell-branded Equilon and Motiva franchisees.

Plaintiffs also claim that jurisdiction and venue are proper in this Court. *See* Complaint ¶¶ 26–27. With specific regard to venue, Plaintiffs claim that venue is proper under either or both the general venue statute, 28 U.S.C. § 1391(b) and/or the specific venue provision of the PMPA in 15 U.S.C. § 2805(a) "because certain named Plaintiffs, and many members of the class which they represent . . . are located within the . . . Central District of California." Complaint ¶ 27.

On July 23, 2001, Defendants filed the three motions which are currently before the Court: all four named Defendants join the Venue Motion, while only Defendant Motiva is represented on the Jurisdiction Motion, and only Defendants Shell and Equiva are represented on the Rule 12(b)(6) Motion. Plaintiffs oppose all three motions (the "Venue Opposition," "Jurisdiction Opposition," "Rule 12(b)(6) Opposition").

## II. LEGAL STANDARDS FOR THE MOTIONS TO DISMISS

### A. *Motion to Dismiss or Transfer for Improper Venue*

Rule 12(b)(3) allows a defendant to bring a motion to dismiss on the basis of improper venue. This defense must be asserted as part of a defendant's first responsive pleading, or brought by separate motion as a defendant's first response, or it is waived under Rule 12(h)(1).

■ Venue in federal courts is governed entirely by statute. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 181, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). The venue rules appear in the general venue statute (28 U.S.C. § 1391), in special venue statutes, and in the improper venue and change of venue provisions (28 U.S.C. §§ 1404 and 1406). There are two grounds on which venue may be changed: (1) where venue is *improper*, a court must dismiss *or* transfer under 28 U.S.C. § 1406; (2) where venue is proper, the court may transfer to another district, for convenience, pursuant to 28 U.S.C. § 1404. In either case, those districts in which venue would be proper are determined by 28 U.S.C. § 1391, or by the special venue statutes that may apply for given causes of action.

The general federal venue statute is 28 U.S.C. § 1391. For cases arising under federal law, § 1391(b), except as otherwise provided by special venue rules, allows that venue is proper in a district where:

> any defendant resides if all defendants reside in the same state;

> a "substantial part of the events or omissions" on which a claim is based occurred, or a "substantial part of the property" that is the subject of the action is located; or

> any defendant "may be found," if there is no district in which the action may otherwise be brought (under the first two prongs).

*See* 28 U.S.C. § 1391(b). There are special venue rules for certain kinds of cases (e.g., Copyright, RICO, and Admiralty claims).

One of those special venue statutes applies in this case, as the PMPA has its own venue provision which provides that a civil action brought by a franchisee against a franchisor to ensure compliance with the provisions and restrictions of the PMPA "may be brought ... in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business ..." 15 U.S.C. § 2805(a).

■ If a plaintiff commences an action in a district in which venue is not proper, the court will (upon timely motion) *dismiss* the action for improper venue or *transfer* the case to any district where it could have been brought "if it be in the interest of justice." 28 U.S.C. § 1406(a); *see, e.g., District No. 1, Pacific Coast District v. Alaska,* 682 F.2d 797, 799 (9th Cir.1982). The court has some discretion in choosing between these two options, though generally it is preferred to transfer the case rather than dismissing it altogether. *See, e.g., Minnette v. Time Warner,* 997 F.2d 1023, 1026–27 (2d Cir.1993). The "interest of justice" language also acts as a limitation on transfer. *See Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1201 (4th Cir.1993).

■ A court may not transfer an action for improper venue unless it has subject matter jurisdiction. *See Bookout v. Beck,* 354 F.2d 823, 825 (9th Cir.1965). However, the "transferor court" need not have *personal* jurisdiction over the defendant(s) to order transfer. It may order the case transferred so that jurisdiction can be established in the "transferee court." *See Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466–67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). It is only proper to transfer venue to a court where the case originally "could have been brought" (i.e., the "transferee court" must have proper subject matter jurisdiction, proper venue, and be

able to exercise personal jurisdiction.). *See* 28 U.S.C. § 1406(a).

### B. Motion to Dismiss for Lack of Personal Jurisdiction

■ Under Federal Rule of Civil Procedure 12(b)(2), a defendant may bring a motion to dismiss on the ground that the court cannot assert personal jurisdiction over that defendant. Like a venue objection, the defense of lack of personal jurisdiction must be asserted in the defendant's first responsive pleading, or by separate motion, or it is waived. *See* Fed.R.Civ. Pro. 12(h)(1). Although defendant is the moving party, as the party who invoked the court's jurisdiction the plaintiff bears the burden of establishing the jurisdictional facts. *See Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995).

■ When a defendant's jurisdictional challenge is made on a motion to dismiss as an *initial response,* the plaintiff's burden is met with a prima facie showing that personal jurisdiction exists. *See Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir.1986); *Ziegler,* 64 F.3d at 473. The plaintiff must demonstrate facts that, if true, would support a finding of jurisdiction. *See Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977); *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995).

■ Where the motion challenges the facts alleged, it must be decided on the basis of competent evidence (e.g., declarations and discovery materials), and the court cannot assume the truth of allegations in a pleading contradicted by a sworn affidavit. *See Data Disc,* 557 F.2d at 1284. In determining whether a plaintiff has met its burden, all of the uncontroverted allegations in the complaint "must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor ...'" *See*

*AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996) (citing *WNS, Inc. v. Farrow,* 884 F.2d 200, 203 (5th Cir.1989)).

■■■■ A federal court has powers of personal jurisdiction as broad as the courts of the state in which it sits, but no broader. *See Omni Capital International v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104–05, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); Fed. R.Civ.P. 4(k)(1). Therefore, when assessing personal jurisdiction in a federal court, the starting point must always be the "long arm" statute of the forum state. *See, e.g., Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir.1986); *Fields,* 796 F.2d at 301. In California, a court "may exercise jurisdiction on any basis not inconsistent with the Constitution of [the] state or of the United States." Cal.Code Civ.Proc. § 410.10; *see Haisten,* 784 F.2d at 1396. Thus, " 'federal courts in California may exercise jurisdiction to the fullest extent permitted by due process.' " *Fields,* 796 F.2d at 301. And as is well settled, due process requires that the nonresident "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 559 (9th Cir.1995) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■■■■ Aside from the "traditional" bases for personal jurisdiction,[3] modern cases recognize a nonresident's "minimum contacts" with the forum state as an alternative basis for personal jurisdiction. Under the "minimum contacts" analysis, there

are essentially two types of personal jurisdiction: general and specific. General jurisdiction is when a defendant's contacts with a forum state are so "substantial" or "continuous and systematic" as to justify the exercise of jurisdiction over the defendant in all matters, even if the claims at issue are unrelated to the defendant's forum-related activities. *See Haisten,* 784 F.2d at 1396; *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952). To gauge general jurisdiction, a court examines "all of the defendant's activities that impact the [forum] state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated here." *Hirsch v. Blue Cross,* 800 F.2d 1474, 1478 (9th Cir.1986).

■■■■ If the nonresident defendant's activities are not so pervasive as to subject him or her to general jurisdiction, the court may assert specific jurisdiction for a cause of action which arises out of the defendant's contacts with the forum. *See Haisten,* 784 F.2d at 1397; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Ninth Circuit has articulated a clear three-part test for determining whether specific personal jurisdiction may be exercised:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities

---

**3.** There are three "traditional" bases for exercise of personal jurisdiction recognized since early common law: (1) personal service within the state (physical presence)—*see Burnham v. Superior Court,* 495 U.S. 604, 610–11, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); (2) domi- cile in the state—*see Milliken v. Meyer,* 311 U.S. 457, 462–63, 61 S.Ct. 339, 85 L.Ed. 278 (1940); and (3) consent—*see, e.g., Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

in the forum, thereby invoking the benefits and protections of its laws[;]

(2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and]

(3) [e]xercise of jurisdiction must be reasonable.

*E.g., Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir.1995) (quoting *Data Disc,* 557 F.2d at 1287).

■ The first two of these criteria "are closely related because they focus on the relationship of the defendant and the claim to the forum state." *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S .A.K.* 757 F.2d 1058, 1062 (9th Cir.1985). "[U]pon a showing that the defendant purposefully directed his activities at forum residents," a rebuttable presumption arises that exercise of jurisdiction is reasonable. *See Haisten,* 784 F.2d at 1397. At that point, defendant bears the burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Ballard,* 65 F.3d at 1500 (quoting *Burger King Corp.,* 471 U.S. at 477–78, 105 S.Ct. 2174).

### C. Motion to Dismiss for Failure to State a Claim

■ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. *See* Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *accord Gilligan,* 108 F.3d at 249 ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'").

■ The Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *See Pareto v. F.D.I.C.,* 139 F.3d 696, 699 (9th Cir.1998). Moreover, the complaint must be read in the light most favorable to the plaintiff. *See id.* However, the Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See, e.g., Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

■ Moreover, in ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (*e.g.,* facts presented in briefs, affidavits, or discovery materials). *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). A court may, however, consider exhibits submitted with the complaint. *See id.* at 453–54. Also, a court may consider documents which are not physically attached to the complaint but "whose contents are alleged in [the] complaint and whose authenticity no party questions." *Id.* at 454. Further, it is proper for the court to consider matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *Mir, M.D. v. Little Co. of Mary Hospital,* 844 F.2d 646, 649 (9th Cir.1988).

### III. ANALYSIS

In the three Motions, Defendants, collectively and individually, seek to have this entire case dismissed or transferred on grounds of improper venue, seek to have Defendant Motiva dismissed for lack of personal jurisdiction over this Defendant,

and seek to have Defendants Shell and Equiva dismissed on the ground that a PMPA claim may not lie against Shell or Equiva in that they are not (or are no longer) PMPA "franchisor[s]" subject to suit thereunder. Plaintiffs oppose each of these Motions on their merits. For reasons detailed below, the Court concludes that Defendants are correct that the Central District of California is an improper venue in which to prosecute the present case. Accordingly, the Court GRANTS the Venue Motion, and ORDERS this case TRANSFERRED to the Southern District of Texas. Except as those arguments as to personal jurisdiction over Motiva more specifically made in the Jurisdiction Motion are relevant to the Venue Motion, the Court does not reach the merits of either the Jurisdiction Motion or the Rule 12(b)(6) Motion: the Jurisdiction Motion because it is mooted by the transfer of venue, and the Rule 12(b)(6) Motion because the issues therein are better decided by the "transferee court."

### A. Venue is Improper in the Central District of California

■ The venue statutes are generally intended to protect a defendant from being forced to defend in an unfair or inconvenient forum. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Moreover, "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Olberding v. Illinois Cent. R. Co.*, 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39 (1953).

■ Because (with certain exceptions which are not relevant here) the requirement of proper venue is designed primarily for the convenience of a defendant, it is not a jurisdictional requirement to suit and may be either impliedly or expressly waived. *See, e.g., Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir.1978). This is reflected in Rule 12(h)(1), which specifically holds that a failure by a defendant to object to improper venue in a first response (either in an initial pleading or by separate motion) waives this objection. *See* Fed.R.Civ.Pro. 12(h)(1). Here, however, Defendants have objected to venue in their first response to the Complaint, and the propriety thereof must thus be determined by this Court as an initial matter.

[32] Plaintiffs first seek to lay proper venue in this Court under the specific venue provision of the PMPA, which provides that an "action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business ..." 15 U.S.C. § 2805(a).[4] This provision plainly contemplates that the proper venue for a PMPA action will be *either* a franchisor's or a franchisee's home district.

The Central District of California, however, is neither of these. It is undisputed that all of the named Defendants are headquartered, and have their principal places of business, in Houston, Texas (which lies within the Southern District of Texas). *See* Complaint ¶¶ 22–25. Therefore, only the Southern District of Texas is a proper venue under the first half of the PMPA enforcement/venue provision. Plaintiffs may not rely on this portion of the provision for proper venue herein.

■ Nor may Plaintiffs rely on the second half of the provision, in that it is also undisputed that only four of the seven

---

4. The PMPA enforcement/venue provision (15 U.S.C. § 2805(a)) only appears to contemplate a *single* franchisee suing a *single* franchisor.

representative (named) Plaintiffs are "doing business" through their stations within the Central District of California. The remaining three Plaintiffs own stations in three or possibly four other judicial districts, in the Southern District of California, in the Southern District of New York, and in at least one judicial district in Texas (the Eastern if not the Northern District of Texas). *See* Complaint ¶¶ 1–7. The fact that these three Plaintiffs are not "doing business" for purposes of the PMPA here in the Central District of California means that venue is also not proper per the *second* half of the PMPA venue provision.[5] Accordingly, venue is not proper under the specific venue provision included in the PMPA enforcement statute (15 U.S.C. § 2805(a)).

Perhaps recognizing this fact, Plaintiffs also seek to rely on subsection (1) of the general venue statute describing the venue(s) proper for cases brought in federal court not solely on the basis of diversity jurisdiction (28 U.S.C. § 1391(b)). Subsection (1) allows that a case may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state ..."28 U.S.C. § 1391(b)(1).[6] As to the meaning of "re-

---

5. Plaintiffs somewhat indirectly appear to argue that venue need not be proper as to *all* representative members of a plaintiff class, so long as it is proper for at least *one* named plaintiff. *See* Venue Opposition at 4. However, the cases relied upon by Plaintiffs state only that personal jurisdiction or venue need not be proper as to the *unnamed* members of the plaintiff class, *so long as it is proper as to all named plaintiffs*. *See id.; In re: Northern District of California "Dalkon Shield" IUD Products Liability Litigation*, 526 F.Supp. 887, 903–09 (N.D.Cal.1981); *Bywaters v. United States*, 196 F.R.D. 458, 463–64 (E.D.Tex. 2000); *U.S. v. Trucking Employers, Inc.*, 72 F.R.D. 98, 99–100 (D.D.C.1976). Notwithstanding the relaxation of venue and personal jurisdiction requirements as to *unnamed* members of a plaintiff class, it is by now well settled that these requirements to suit must be satisfied for *each and every named plaintiff* for the suit to go forward. *See id.; see also United States ex rel. Sero v. Preiser*, 506 F.2d 1115, 1129–30 (2d Cir.1974); *Dunn v. Sullivan*, 758 F.Supp. 210, 216 (D.Del.1991). The same is true of defendant class actions (i.e., each and every named *defendant* must meet jurisdiction and venue criteria). *See In re Gap Stores Securities Litigation*, 79 F.R.D. 283, 292 n .6 (N.D.Cal.1978); *Appleton Elec. Co. v. Advance–United Expressways*, 494 F.2d 126, 140 (7th Cir.1974). Therefore, it is irrelevant whether venue is proper as to *some* named Plaintiffs. *See also* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1757 at 91 (2d ed.1986); 5 *Moore's Federal Practice* § 23.2.04[3] at 23.2–11 (Matthew Bender 3d ed.1997) (describing these rules).

6. Plaintiffs do not argue the application of subsections (2) and (3) to this statute (28 U.S.C. § 1391(b)), which provide that a case may also be brought in "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b)(2), (3). Nor could they reasonably do so. As to subsection (2), it seems clear that the *primary* "events or omissions" at issue in this case are the development and promulgation of the "new dealer paper" (the only conduct addressed by the PMPA is that constituting a termination or non-renewal, such that Plaintiffs' claim(s) must be solely or primarily addressed to the new agreements), which largely took place at the headquarters of Equilon and/or Motiva in Houston, Texas. Any other events/omissions, or subject properties, are likely to be as far-flung as are the named and unnamed Plaintiffs themselves, and not concentrated in any one judicial district. As to subsection (3), this "catch-all" provision is not applicable in this case, because the Southern District of Texas is clearly a district in which the case might "otherwise be brought," under either or both the specific PMPA venue provision (where the principal place of business of the franchisor is located) and/or the general venue statute (all of the Defendants "reside" within the Southern District of Texas).

side[s]," Section 1391(c) states that for purposes of venue "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Plaintiffs claim that all of the Defendants "reside" in the State of California, and that at least one "resides" specifically in this district. *See* Venue Opposition at 4–5 (relying on the lack of objection to personal jurisdiction from all but Defendant Motiva).

As an initial matter, it is very questionable whether Plaintiffs may rely on the general venue statute (28 U.S.C. § 1391) to *supplement* the venue provision(s) of the PMPA 15 U.S.C. § 2805(a). The case law on whether so-called "special venue statutes" are *exclusive* or may be *supplemented* by general venue statutes is both confused and confusing, and in this case the Court is not aided by legislative history for the PMPA statute suggesting whether the drafters thereof *intended*[7] for the Act to expand or contract venue in PMPA cases. *See Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 198–99, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000); *Go–Video, Inc. v. Akai Electric Co., Ltd.*, 885 F.2d 1406, 1409–10 (9th Cir. 1989). This is a question of first impres-

sion, as there are no other reported cases construing the effect of the PMPA venue provision as being either exclusive or supplemental to the general statute.

It is this Court's opinion that the PMPA venue provision ought to be *exclusive* of the general statute, as it appears closer in language and effect to those "special venue statutes" which *have* been found to be exclusive (e.g., patent infringement cases and Title VII claims) than those which have not (e.g., Jones Act and Clayton Act).[8] *But see Cortez Byrd Chips, Inc.*, 529 U.S. at 198–99, 120 S.Ct. 1331 (construing similar venue provision in the Federal Arbitration Act to be non-exclusive). And as has been shown, this district is not a proper venue under the PMPA.

However, even assuming[9] that Plaintiffs *may* rely on the general venue statute as a *supplement* to the PMPA venue provision, this does not help them establish proper venue here in the Central District of California. This is because, contrary to Plaintiffs' arguments, not all of the named Defendants "reside," for purposes of venue, here in the State of California. Accordingly, the requirements of 28 U.S.C. § 1391(b)(1)("(1) a judicial district where any defendant resides, if all

---

7. The parties have not cited, nor has the Court discovered, any legislative history suggesting whether Congress had *any* intent as to the venue provision of the PMPA when it was enacted. Indeed, it is not clear whether this provision was ever even the subject of debate.

8. *See, e.g., Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 224–29, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) (patent infringement); *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 565–67, 62 S.Ct. 780, 86 L.Ed. 1026 (patent infringement); *Johnson v. Payless Drug Stores Northwest, Inc.*, 950 F.2d 586, 587 (9th Cir.1991) (Title VII); *Pure Oil Co. v. Suarez*, 384 U.S. 202, 204–07, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966) (Jones Act); *Go–Video, Inc.*, 885 F.2d at 1409–10 (Clayton Act).

9. This seems the wisest course, given the Ninth Circuit's clear implication in *Go–Video, Inc.*, 885 F.2d at 1409, that courts should assume that "special venue statutes" are meant to *expand* rather than *restrict* the availability of venue in the absence of an indication in a statute or its legislative history that the opposite was intended. A similar presumption in favor of "supplemental" effect seems to have motivated the Supreme Court decision in *Cortez Byrd Chips, Inc.*, 529 U.S. at 197–204, 120 S.Ct. 1331; *see also Textile Unlimited, Inc. v. A. BMH and Co., Inc.*, 240 F.3d 781, 784–86 (9th Cir.2001) (applying *Cortez Byrd*).

defendants reside in the same state ...") are not here met.

■ Specifically (and here the Court relies on the papers filed in support of, and opposition to, the Jurisdiction Motion), there is no competent evidence that Defendant Motiva "resides" (i.e., is subject to personal jurisdiction) in this district or in this state. It is Plaintiffs' burden to establish these jurisdictional facts as to each Defendant. *See Ziegler,* 64 F.3d at 473; *Ballard,* 65 F.3d at 1498. In the case of Defendant Motiva, Plaintiffs have failed this burden.

Indeed, Plaintiffs provide no evidence or even allegations that Motiva *itself* has had *any* "contacts" with the State of California, let alone sufficient "minimum contacts" to establish either general or specific personal jurisdiction. It is undisputed that Motiva has its corporate headquarters (and principal place of business) in Houston, Texas. It is also undisputed that *none* of the franchisees with whom Motiva enjoys franchise relationships are located in California.

Defendant Motiva has provided an uncontroverted declaration from its Assistant Secretary (whose competence to testify to the scope of its business is unchallenged) stating that Motiva is not registered to do business in California, has no agent for service of process here, maintains no office, bank account, mailbox, telephone listing, sales facility, storage facility, or refinery in this state, has no agents or employees within the state, has never owned any real or personal property in this state, has never filed any state or local tax returns in California, does not supply goods or services to California, or advertise or otherwise solicit business within the state, and does not (to the best of declarant's knowledge) purchase products or services in

California on a regular or substantial basis. *See* Declaration of T.J. Howard ("Howard Decl.") ¶¶ 5–10. Moreover, it is undisputed that while Motiva has a fifty percent ownership interest in Equiva, which does do business in California *on behalf of Equilon,* Equiva has never done any business in California on *Motiva's* behalf (a conclusion which is a natural outgrowth of the fact that Motiva *has* no franchisees in California, and therefore has no need for Equiva to perform any of its franchise-related services within the state). *See* Howard Decl. ¶ 11. Finally, it is undisputed that Motiva does not share profits or losses with Equilon, which does have franchises in California. *See id.* ¶ 12.

Instead of any allegations or evidence purporting to show that Motiva has *itself* had contacts with California, Plaintiffs rely on a contention that the exercise of personal jurisdiction over Motiva in this case would be reasonable because Equiva has acted as its "agent" within the State of California. However, this unsupported argument is belied by the fact that Motiva *has* no franchises in California, and Equiva therefore does not *act* on Motiva's behalf within this state.

■ Similarly unpersuasive are Plaintiffs' arguments that Motiva may be haled into court in this state based on specific jurisdiction which results from its alleged "purposeful availment" of the benefits and obligations of this state. Plaintiffs apparently argue that because Equilon and Motiva *jointly* prepared the new franchise agreements to which the Plaintiffs' claims in this case are addressed, which Motiva knew were to be distributed nationwide, including in California (only to *Equilon* franchisees, of course), Motiva must have *anticipated* a likelihood that it would be

required to defend itself in California. This argument is fatally flawed, however, inasmuch as Motiva clearly would *not* have anticipated being subject to suit in California, as California is expressly within Equilon's sole franchisee territory, and it is only Equilon, *not* Motiva, which supplies franchisees in the State of California. Plaintiffs' non-specific allegations of some "joint enterprise" with regard to the State of California between the two entities notwithstanding, it is clear that Equilon and Motiva are separate entities, separately owned by different parent companies, and Motiva may not be brought into a California court based on *Equilon's* (or Equiva's) actions conducted within the confines of the state.[10]

■ Accordingly, this action is not properly venued in this Court, and dismissal and/or transfer is appropriate under Rule 12(b)(3) and 28 U.S.C. § 1406. Because venue (and personal jurisdiction over the Defendants) is proper in the Southern District of Texas under either or both the PMPA venue provision and/or the general venue statute, a transfer is in order. Thus, the Court GRANTS the Venue Motion and ORDERS this case TRANSFERRED to the Southern District of Texas.

## B. The Remaining Jurisdiction and Rule 12(b)(6) Motions

■ Because the Court has determined that venue is improper in this district, and has transferred this case to the Southern District of Texas, it need not separately consider the Jurisdiction Motion filed by Defendant Motiva. Accordingly, that Motion is hereby DENIED, as moot. Nor

should this Court, in the absence of proper venue, reach the merits of the Rule 12(b)(6) Motion filed by Defendants Shell and Equiva. This should be left for the transferee court. This Motion is also, therefore, hereby DENIED, without prejudice to its re-filing.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that this action is improperly venued in the Central District of California, under either or both the specific venue provision of the PMPA (15 U.S.C. § 2805(a)) and/or the general venue provision(s) for cases not based solely on diversity jurisdiction (28 U.S.C. § 1391(b)). Accordingly, the Court hereby GRANTS Defendants' jointly-filed Venue Motion, and ORDERS this case TRANSFERRED to the Southern District of Texas for all further proceedings. The Court does not reach Defendant Motiva's Jurisdiction Motion, or Defendant Shell's Rule 12(b)(6) Motion. The Jurisdiction Motion is hereby DENIED, without prejudice, as mooted by the transfer of venue. The Rule 12(b)(6) Motion is DENIED, without prejudice to its consideration by the transferee court upon transfer thereto.

10. *See* Complaint ¶¶ 23–24 (Equilon is 56%/44% owned by Shell and Texaco; Motiva is 35%/32.5%/32.5% owned by Shell, Texaco, and SRI).